# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

RONALD LYCANS and ROBIN LYCANS,

        Plaintiffs,

v.                              CIVIL ACTION NO. 2:24-cv-00707

NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY,

        Defendant.

## ORDER

This matter is before the Court on two cross-motions concerning a discovery dispute that has arisen between the parties. (ECF Nos. 69; 71). First, Plaintiffs Ronald Lycans and Robin Lycans (together, "Plaintiffs") filed a *Motion to Compel*, seeking an order compelling Defendant Nationwide Property & Casualty Insurance Company ("Defendant" or "Nationwide") to designate and prepare a corporate representative to testify on two matters for examination (hereinafter, "Topics") set forth in Plaintiffs' October 9, 2025 *Notice of Rule 30(b)(6) Deposition* (ECF No. 48) served on Defendant on October 9, 2025. (ECF No. 69). In response, Defendant Nationwide filed a *Motion for Protective Order* requesting that the Court "enter an Order that the discovery requests set forth in Topics 10 and 13 of Plaintiffs proposed Rule 30(b) topics not be had[.]" (ECF No. 71 at 2). For the reasons set forth herein, **IT IS ORDERED** that each of the parties' motions are hereby **GRANTED IN PART** and **DENIED IN PART**.

I.     **BACKGROUND**

As the Court previously observed, this civil action involves a dispute between an insurer—Defendant Nationwide—and its insureds—Plaintiffs Ronald Lycans and Robin Lycans. (ECF No. 35 at 1). Plaintiffs allege that they purchased a homeowner's insurance policy for their residence from Nationwide, and subsequently made a claim for property damage under the policy after a tree fell through the roof of Plaintiffs' home on April 2, 2024. *Id*. In their *Complaint*, Plaintiffs allege that Defendant "engaged in dilatory tactics" in the handling of their insurance claim, and additionally, "failed to properly investigate the claim, and made an unreasonably low settlement offer that is grossly inadequate to cover the cost of repairs to the property." *Id*. at 2.

Based upon these allegations, Plaintiffs assert a breach-of-contract claim premised on Defendant's alleged failure to offer a sufficient sum to cover the necessary repairs to Plaintiffs' property. *Id*. Additionally, based upon its handling of Plaintiffs' claim under the policy, Plaintiffs assert a "common law bad faith" claim for breach of the duty of good faith and fair dealing, as well as a "statutory bad faith" claim pursuant to the West Virginia Insurance Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-1, *et seq*. (ECF No. 1-1 at 7-8). Plaintiffs assert, *inter alia*, that Defendant failed to conduct a prompt and thorough investigation of Plaintiffs' claim; failed to provide a reasonable basis for its low settlement offers; delayed the settlement of the claim without justification; and engaged in practices designed to pressure Plaintiffs into accepting an inadequate settlement. (ECF No. 35 at 2). Lastly, Plaintiffs assert a claim of unjust enrichment. *Id*.

The presiding U.S. District Judge entered the operative *Amended Scheduling Order* in this matter on October 2, 2025. (ECF No. 41). Pursuant to this case schedule, the parties' deadline to complete discovery is February 10, 2026. *Id*.

Plaintiffs filed their subject *Motion to Compel* on December 23, 2025. (ECF No. 69). Therein, Plaintiffs explain that the parties have met and conferred on Plaintiffs' *Notice of Rule 30(b)(6) Deposition* (ECF No. 48); Plaintiffs represent that they agreed to narrow the scope of two of the Topics set forth therein—Topic 10 and Topic 13—but that the parties remain at an impasse. (ECF No. 69 at 1). Plaintiffs seek an order compelling Defendant Nationwide to designate and prepare a corporate representative to testify on both of the disputed Topics. In support, Plaintiffs assert that the Topics are each central to their claims, but that Defendant unreasonably maintains its objections on the basis of relevance, proportionality, and burden. *Id.* at 3.

Defendant Nationwide filed its response in opposition to Plaintiffs' motion on January 6, 2026. (ECF No. 72). Additionally, Defendant contemporaneously filed its pending *Motion for Protective Order*, seeking to prohibit the same discovery that is the subject of Plaintiffs' *Motion to Compel*. The arguments advanced in support of Nationwide's request for a protective order are substantively identical to those raised in opposition to Plaintiffs' request for an order compelling Nationwide to produce a 30(b)(6) witness on the two disputed Topics. As a result, the Court takes up the motions together.

## II.  LEGAL STANDARD

### A.  Protective Order

Rule 26(b)(1) sets forth the scope of discovery under the Federal Rules of Civil Procedure, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is [1] relevant to any party's claim or defense and [2] proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). As such, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Information sought

is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Maryland v. W.L. Gore & Assocs., Inc.*, 24-cv-3656, 2026 WL 100579, at *1 (D. Md. Jan. 14, 2026) (citing *Oppenheimer's* relevance standard); *Mumaw v. DNF Assocs., LLC*, 3:23-cv-57, 2023 WL 9103713, at *1 (N.D. W. Va. Nov. 17, 2023) (same); *Lyman v. Greyhound Lines, Inc.*, 2:20-cv-01812, 2021 WL 719904, at *2 (D.S.C. Feb. 24, 2021) (same).

The broad scope of relevance is tempered by the proportionality standard set forth in Rule 26(b)(1), whereby "all permissible discovery must be measured against the yardstick of proportionality." *United States v. Neuberger*, 22-cv-2977, 2024 WL 3370582, at *1 (D. Md. Apr. 16, 2024). Determining whether discovery is "proportional to the needs of the case" pursuant to Rule 26(b)(1) requires consideration of six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Accordingly, "[s]imply because information is discoverable under Rule 26 . . . does not mean that discovery must be had." *Scott Hutchison Enters., Inc.*, 3:15-cv-13415, 2016 WL 5219633, at *2 (S.D. W. Va. Sept. 20, 2016) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)).

Notwithstanding the broad scope of discovery, Rule 26(c) provides, in pertinent part, that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). Additionally, Rule 26(b)(2)(C) provides that the Court "*must* limit the frequency or

extent of discovery" if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

The party moving for a protective order must set forth a specific reason for the protective order, and it bears the burden of establishing good cause. *See, e.g.*, *Citynet, LLC v. Frontier W. Va., Inc.*, 2:14-cv-15947, 2022 WL 2335332, at *4 (S.D.W. Va. June 28, 2022) ("The party moving for a protective order bears the burden of establishing good cause."); *United Property & Casualty Ins. v. Couture*, 2:19-cv-01856, 2021 WL 5141292, at *2 (D.S.C. Nov. 4, 2021); *Minter* v. *Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124-125 (D. Md. 2009). *See also Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he party or person resisting discovery . . . bears the burden of persuasion."). Good cause cannot be established merely by relying upon general statements; rather, the party resisting discovery "must provide particular and specific facts to meet the high burden of proving that a protective order should issue." *Citynet*, 2022 WL 2335332, at *4.

To insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). *See also Fonner v. Fairfax Cty.*, 415 F.3d 325, 331 (4th Cir. 2005) (explaining that the decision to enter a protective order is committed to the sound discretion of the trial court). Likewise, resolution of motions to compel are "generally left within the broad discretion of the District Court." *Lone Star*, 43 F.3d at 929. *See also Erdmann v. Preferred Research Inc.*,

852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) (same). The Federal Rules of Civil Procedure thus confer "substantial discretion . . . in managing discovery" to the federal district court. *Doe v. Cabell Cty. Bd. of Educ.*, 3:21-cv-31, 2022 WL 288193, at *4 (S.D. W. Va. Jan. 31, 2022) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

### B. Rule 30(b)(6)

Rule 30(b)(6) of the Federal Rules of Civil Procedure addresses deposition discovery directed to an organization. It provides that a deposition notice "must describe with reasonable particularity the matters for examination," and the "named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6). Either "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." *Id.* Then, the organization must prepare the designated person so that he can "testify about information known or reasonably available to the organization." *Id.*

### III. DISCUSSION

Defendant seeks a protective order barring Plaintiffs from proceeding with a Rule 30(b)(6) deposition as to Topics 10 and 13 in Plaintiffs' *Notice*, while Plaintiffs, in turn, seek an order compelling Defendant to produce a Rule 30(b)(6) witness to testify as to both of the Topics at issue. (ECF Nos. 69; 71). Plaintiffs argue that Topics 10 and 13 are narrowly tailored, relevant to Plaintiffs' bad-faith and WVUTPA claims, and proportional to the needs of the case. (ECF No. 79 at 1). According to Plaintiffs, Nationwide's motion

6

improperly conflates discovery relevance with evidentiary admissibility, relies on conclusory and unsupported assertions of burden, and seeks to foreclose policy-level and pattern-and-practice discovery expressly authorized by controlling law. *Id.* In contrast, Defendant Nationwide argues that the discovery sought "is oppressive, harassing, not proportional to the needs of this case, and unduly burdensome." (ECF No. 72 at 1).

### A. Disputed Topics

#### i. Topic 10

Topic 10 seeks testimony regarding "Incentive, Bonus, and Compensation Programs." (ECF No. 48 at 3). Specifically, the *Notice* describes this Topic as follows:

> The structure, criteria, and operation of any incentive, bonus, or performance-based compensation programs for adjusters, supervisors, or managers during the period of Plaintiffs' claim, including: criteria for determining amounts of bonuses or incentive pay; merit-based increases and performance evaluations; success- or goal-sharing plans and leadership recognition programs; retention or recognition bonuses; and any metrics tying compensation to claims handling or closure rates.

*Id.* at 3-4. Plaintiffs assert that—after conferring with Defendant extensively—they agreed on November 24, 2025 to narrow Topic 10. (ECF No. 69 at 2). First, Plaintiffs agreed to exclude from examination "bonus programs, incentive compensation, individualized pay, or personnel files." *Id.* Further, Plaintiffs assert that they agreed to limit examination on Topic 10 to "policy-level advancement, promotion, and performance evaluation criteria applicable to claims personnel handling first-party property claims, including any performance metrics used for advancement or promotional eligibility." *Id.* at 2-3.

In their *Motion to Compel*, Plaintiffs argue that this "focused inquiry into Nationwide's institutional standards" is "at the heart of Plaintiffs' claims," namely, Plaintiffs' allegation that Defendant "failed to adopt and implement reasonable standards governing the investigation, evaluation, and settlement of first-party claims." (ECF No.

7

69 at 4-5). Plaintiffs assert that "[p]erformance evaluation and advancement criteria are among the primary mechanisms by which an insurer communicates expectations, priorities, and acceptable conduct to its claims personnel . . . bear[ing] directly on whether Nationwide maintained reasonable claims-handling standards." *Id.* at 5.

Defendant Nationwide, in turn, argues that "Topic 10 . . . is oppressive and seeks discovery that is not proportional to the needs of the case." (ECF Nos. 71 at 1; 72 at 5). Defendant therefore seeks a protective order prohibiting Plaintiffs from seeking testimony on this Topic altogether. (ECF Nos. 71 at 1; 72 at 6). In support, Defendant characterizes the Topic as "unduly vague," because the term "policy-level advancement" is undefined. (ECF No. 72 at 6). Additionally, Defendant argues that the Topic is facially overbroad because it is "not limited to the specific claims personnel who handled the homeowners' property claim in the State of West Virginia . . . [for] the relevant time frame that this claim was pending[.]" *Id.* Finally, Defendant argues that "no evidence has been developed on the record" to support a finding that the adjuster assigned to handle the insurance claim at issue "was promoted or demoted as a result of handling of the [Plaintiffs'] claim." *Id.* at 7. Likewise, Defendant argues that "absolutely no evidence is present on the record that the adjuster made specific claims related decisions in deference to promotion or performance criteria." *Id.* Defendant concludes that a protective order is appropriate, therefore, to prevent Plaintiffs from engaging in a "fishing expedition" on this issue. *Id.*

In response to Defendant's arguments, Plaintiffs argue that this Court has compelled discovery on the issue of institutional standards for adjuster incentives "routinely," and that Defendant's objections improperly impose a higher "admissibility" standard atop the "discoverability" standard set forth in Rule 26(b) of the Federal Rules

8

of Civil Procedure. (ECF No. 78). Plaintiffs further argue that "discovery into an insurer's institutional standards is necessary to evaluate whether the insurer maintained reasonable claims-handling practices and engaged in a general business practice under the UTPA." *Id.* at 4 (citing *Paull Assocs. Realty, LLC v. Lexington Ins. Co.*, 5:13-cv-80, 2014 WL 12596397, at *3-10 (N.D. W. Va. Jan. 9, 2014).

First, Defendant's vagueness objection is overruled. Certainly, Rule 30(b)(6) requires that a notice set forth the matters for examination with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). However, Plaintiffs' deposition notice along with its limiting statement further narrowing the scope of Topic 10 sets forth in detail the information Plaintiffs seek—Nationwide's advancement, promotion, and performance-evaluation criteria applicable to claims personnel handling first-party property claims. As Plaintiffs pointed out in their briefing, such information is "routinely" sought in cases wherein insureds assert statutory "bad faith" claims against their insurer pursuant to the UTPA. It is well-established that the burden is upon the party resisting discovery, not on the party propounding discovery, to demonstrate *specifically* why the discovery should not be had. *See Slampak v. Nationwide Ins. Co. of Am.*, 5:18-CV-154, 2019 WL 4418806, at *7 (N.D. W. Va. Sept. 16, 2019). Simply put, "[t]he party objecting to discovery as vague or ambiguous has the burden of showing such vagueness or ambiguity." *Paull Assocs. Realty, LLC*, 2014 WL 12596397, at *9. Here, Defendant has not met that burden, as a commonsense reading of the Topic and Plaintiffs' explanation makes clear what information Plaintiffs seek. As such, the Court **FINDS** that the information sought is both relevant and discoverable under the circumstances.

Defendant's proportionality objection, however, stands on firmer ground. As set forth, *supra*, "[s]imply because information is discoverable under Rule 26 . . . does not

9

mean that discovery must be had." *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2. Rather, "all permissible discovery must be measured against the yardstick of proportionality" under the Rule 26(b)(1) standard. *Neuberger*, 2024 WL 3370582, at *1. The Court **FINDS** that further limitations in scope are necessary to ensure that the discovery sought "is sufficient, yet reasonable" such that it is proportional to the needs of the case. *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2. First, Defendant is correct that geographic and temporal limitations in scope are appropriate under the circumstances. *See Paull Assocs. Realty, LLC*, 2014 WL 12596397, at *4 (agreeing "that it is appropriate to temporally limit the requests to the time period from the date of the occurrence to the date the complaint was filed"); *Burgess v. Nationwide Prop. & Cas. Ins. Co.*, 3:23-cv-142, 2024 WL 5705067, at *10 (N.D. W. Va. Jan. 8, 2024) (limiting scope of discovery request to "claims for fire losses arising under West Virginia homeowners' insurance policies" within a "timeframe . . . [of] five years"); *Miller v. Liberty Mut. Fire Ins. Co.* 2004 WL 897086, at *2 (S.D.W.V. April 27, 2004) (imposing five-year limitation to scope of discovery sought). Finally, there is support for Defendant's assertion that the scope of this Topic should be limited to the specific claims personnel who handled the claim. *Burgess*, 2024 WL 5705067, at *13 (limiting scope of a plaintiff's discovery request to "the two claims handlers who actually handled Plaintiff's claim").

In light of the foregoing, Defendant is **ORDERED** to produce a corporate representative to testify with respect to Topic 10 pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. However, the scope of Topic 10 shall be further limited to information pertaining to the calendar year 2024, within the geographic area of the State of West Virginia, and solely with respect to the Nationwide claims handlers who were assigned to handle Plaintiffs' claim during that time period. Accordingly, Plaintiffs'

*Motion to Compel* (ECF No. 69) is **GRANTED IN PART** and **DENIED IN PART** with respect to Topic 10, as set forth hereinabove, and Defendant's *Motion for Protective Order* (ECF No. 71) is likewise **GRANTED IN PART** and **DENIED IN PART** with respect to Topic 10, as set forth hereinabove.

### ii. Topic 13

Topic 13 seeks testimony regarding the following:

> Related West Viriginia Homeowner's property damage claims identified by Nationwide in discovery, including but not limited to:
> a. Hite v. Nationwide Property & Casualty Insurance Company (Berkeley County)
> b. Collin v. Nationwide Property & Casualty Insurance Company (Kanawha County)
> c. Pettry v. Nationwide Property & Casualty Insurance Company (Kanawha County)
> d. Fowler v. Nationwide Property & Casualty Insurance Company (Kanawha County)
> e. Heironimus v. Nationwide Property & Casualty Insurance Company (Berkeley County)
> f. Burgess v. Nationwide Property & Casualty Insurance Company (N.D.W. Va.)

(ECF No. 48 at 4). Plaintiffs assert that, after conferring with Defendant, they agreed to withdraw their inquiry into the *Hite* and *Fowler* matters set forth in subparts a. and d., *supra*, and narrowed the scope of Topic 13 "to four specifically identified first-party bad faith property damage homeowner cases in West Virginia from the past few years—*Collin*, *Pettry*, *Heironimus*, and *Burgess*." (ECF No. 69 at 3). Further, Plaintiffs assert that they "seek only five categories of high-level information for each matter[.]" *Id*. Specifically, with respect to the four selected matters, Plaintiffs seek to question Defendant's corporate representative(s) about the following categories: "(1) claim or litigation status; (2) type of property loss alleged; (3) nature of the conduct alleged against Nationwide; (4) ultimate resolution; and (5) whether the resolution exceeded Nationwide's pre-litigation offer,

11

without requiring disclosure of confidential dollar amounts." *Id*. Plaintiffs summarize that, as narrowed, Topic 13 "is confined to four specifically identified West Virginia homeowner matters and to five discrete categories of high-level factual information." *Id*. at 6.

Plaintiffs argue that Topic 13 is proper because they are entitled to discover "information that may reveal whether the conduct alleged here was isolated or reflective of broader claims-handling practices." *Id*. (citing *Miller v. Pruneda*, 236 F.R.D. 277, 285-86 (N.D. W. Va. 2004) (recognizing that evidence of similar conduct may demonstrate whether an insurer's actions were isolated or part of a broader practice)). Addressing Defendant's objection that other claims must be "substantially similar," Plaintiffs argue that Defendant improperly imposes an "evidentiary burden that does not apply" at the discovery stage of the litigation. (ECF No. 69 at 6-7). Finally, Plaintiffs argue that Nationwide's "[c]onclusory assertions of burden are insufficient" to meet its burden in resisting discovery – particularly where, as Plaintiffs argue, "the topic[] [is] targeted, and the information sought is uniquely within Nationwide's possession."

In response, Defendant Nationwide objects that Topic 13 "seeks discovery of information that is neither relevant, nor proportional to the needs of this case[.]" (ECF No. 72 at 7). Defendant acknowledges that Topic 13 "pertains to Plaintiffs' UTPA claim." *Id*. at 8. Plaintiffs must, as Defendant characterizes, "establish a general business practice by proving that the [Defendant's] alleged violations of the UTPA occurred with such frequency as to indicate a general business practice."[1] *Id*. Regardless of this obvious

---

[1] The West Virginia statute at issue, which sets forth the elements of a UTPA claim, states as follows in relevant part: "Unfair claim settlement practices. – No person shall commit or perform with such frequency as to indicate a general business practice any of the following: . . . [f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies[.]" W. Va. Code § 33-11-4(9)

relevance to Plaintiffs' claim, Defendant argues that "[g]eneral business practice discovery must still have a reasonable nexus to the alleged violation at issue." *Id.* at 9. According to Defendant, "only [other] claims involving the same claim handling issue, and the same type of loss are sufficiently similar to [Plaintiffs'] claim to be discoverable[.]" *Id.* According to Defendant, the matters identified in Topic 13, as narrowed, are not sufficiently similar to warrant discovery because "none of the four cases identified by the [Plaintiffs] resulted in a finding of a general business practice." *Id.* Defendant also argues that the discovery sought is not proportional to the needs of the case because it is "unduly burdensome" and "oppressive[.]" *Id.* at 10. Finally, Defendant argues that the information sought is a matter of public record and therefore equally accessible by Plaintiffs.

      Defendant's arguments fail. First, Topic 13 is unquestionably relevant. In fact, this type of discovery was expressly authorized by the Supreme Court of Appeals of West Virginia in *Jenkins* and its progeny. *See Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252, 260 (W. Va. 1981), *overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721 (W. Va. 1994). As the Supreme Court of Appeals explained in *Jenkins*, to support a UTPA claim, "more than a single isolated violation of W. Va. Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of a 'general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action." *Jenkins*, 280 S.E.2d at 260. The Supreme Court of Appeals further explained that "[p]roof of other violations by the same insurance company to establish the frequency issue . . . is, of course, subject to discovery, and it appears that the Legislature intended under W. Va. Code, 33-11-4(10), to require insurance companies to maintain records on complaints filed against it." *Id.*

13

Furthermore, Defendant's insistence on a substantial similarity requirement is unsupported,[2] particularly in the narrow application advocated by Defendant. The undersigned agrees with Plaintiffs that West Virginia law does not require that comparator claims be identical in every respect, and Defendant's relevance arguments are pointed toward admissibility, rather than a discoverability standard.

Defendant's insistence on substantial similarity as a foundation for discoverability has been rejected on the same grounds in the context of product-liability claims. *See Edwards v. Arctic Cat, Inc.*, 3:12-cv-03269, 2013 WL 4017152, at *3 (S.D.W. Va. Aug. 6, 2013). In *Edwards*, the Court found that the party resisting discovery impermissibly relied on the "substantial similarity doctrine," explaining that "it applies to the admissibility of evidence at trial rather than the relevancy of information for purposes of discovery." *Id.* at *2. The Court explained in *Edwards* that "the demands on the plaintiff are considerably more relaxed in the context of discovery and, clearly, 'the defendant should not be the final arbiter of substantial similarity for the purposes of determining the scope of a plaintiff's discovery requests.'" *Edwards*, 2013 WL 4017152 at *3.

In support of its exacting similarity requirement, Defendant further relies on an opinion by the Supreme Court of Appeals of West Virginia in *State Farm Mut. Auto Ins. Co. v. Stephens*, 425 S.E.2d 577, 585 (W. Va. 1992). (*See* ECF No. 72 at 9). However, the circumstances in *Stephens* are distinguishable from the matter at hand. *Stephens* rejected the discovery sought on the basis of proportionality, not scope. The discovery sought in

---

[2] Defendant cited to *McCormick v. Allstate Ins. Co.*, 505 S.E.2d 454 (W. Va. 1998) for the proposition that "dissimilar complaints/claims are irrelevant and not discoverable." (ECF No. 72 at 9). However, the *McCormick* opinion did not address a discovery issue and rather discussed *admissibility* of similar-acts evidence in support of a *punitive damages* claim. *See McCormick*, 505 S.E.2d 454, 465 n.13. Regardless, for the reasons stated herein the undersigned finds that the discovery sought is sufficiently similar to the claim at issue in this matter to warrant discovery under the circumstances.

*Stephens* was facially overbroad in scope, seeking from the insurer "every claim filed against it, nationwide, since 1980 which involved allegations of bad faith, UTPA violations, excess verdict liability, or inquiries from insurance industry regulators concerning State Farm's handling of claims." *Stephens*, 425 S.E.2d at 580. The Supreme Court of Appeals found that the discovery sought was relevant to the *Stephens* plaintiffs' UTPA claim. *Id.* at 583. However, it found the plaintiffs' request was unduly burdensome in light of the national scope and extensive, ten-year time period involved, in addition to the "uncontradicted testimony of [a representative of the insurer] indicat[ing] that compilation of the information requested . . . would take literally years of man-hours to complete and would cost approximately $40 million." *Id.* at 584-85. The Supreme Court of Appeals explained that, in light of the clear burdensomeness of the plaintiffs' request, "the logical approach in this case would be <u>initially</u> to narrow the scope of the interrogatories to other similar claims filed against State Farm in West Virginia." *Id.* at 585 (emphasis added). The Supreme Court of Appeals made it clear that this did not necessarily end the inquiry, stating that "[i]t may be that these responses are adequate to the plaintiffs' needs so as to obviate the necessity for further discovery . . . . If not, or if the plaintiffs object that the responses are incomplete, then the trial court should determine whether more extensive discovery is warranted." *Id.*

Moreover, even if *Stephens* had required the plaintiff to narrow the scope of her discovery request to "similar claims," the circumstances in *Stephens* are nonetheless distinguishable from the matter *sub judice*. The undersigned **FINDS** that the exacting similarity standard advocated by Defendant is artificially narrow. The Supreme Court of Appeals in *Stephens* noted with approval another interrogatory propounded by the *Stephens* plaintiffs "requesting information concerning bad faith, unfair trade practices,

15

and unfair settlement practices claims filed against State Farm in West Virginia." *Id.* at 585. It did not require Plaintiffs to narrow the scope of their requests to "only claims involving the same claim handling issue, and the same type of loss" as Defendant suggests. (ECF No. 72 at 9).

Here, Plaintiffs have reasonably narrowed the scope of their inquiry along the same lines set forth by the Supreme Court of Appeals in *Stephens*. Unlike the plaintiffs in *Stephens*, who sought discovery regarding *all* bad-faith claims nationwide, here Plaintiffs have appropriately tailored the scope of their requests to only four matters, all of which occurred within the State of West Virginia. It appears that each of the four matters involved claims made pursuant to a homeowners insurance policy, like the Plaintiffs' subject policy at issue in this civil action. While Defendant argues that none of the four matters involved *findings* of unfair claims settlement practices, it is sufficient that these matters involved *allegations* of unfair practices. Under the circumstances of this case, the undersigned **FINDS** that Plaintiffs' requests are appropriately similar to warrant discovery. Simply put, Defendant's objections speak to the admissibility of the evidence sought, not discoverability.

Defendant's remaining objections are likewise unavailing. While Defendant argues that the information sought is equally available to Plaintiffs and Defendant, Plaintiffs argue that the question of "whether a resolution exceeded Nationwide's pre-suit offer is uniquely within Nationwide's possession and not available from public filings or third parties." (ECF No. 78 at 6). Likewise, Defendant's argument that the information sought is "oppressive" or "unduly burdensome" falls short. It is well-established that the burden is upon the party resisting discovery, not on the party propounding discovery, to demonstrate *specifically* why the discovery should not be had. *See Slampak*, 2019 WL

4418806, at *7 (explaining that a party objecting on the basis that a request is overly broad, burdensome, or seeks irrelevant information must "show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation").

As this Court has explained at length, boilerplate assertions of overbreadth by the party resisting discovery are generally insufficient. *Deitz v. Pilot Travel Centers, LLC*, No. 3:14-cv-31091, 2015 WL 5031229, at *2 (S.D.W. Va. Aug. 25, 2015). In *Deitz*, the party resisting discovery on the grounds of burdensomeness "did not provide any affidavits or other evidence outlining the anticipated time and resources that would be involved in gathering the information," including information "regarding the amount of documentation that would have to be collected and reviewed in order to respond[.]" *Id*. The Court pointed out in *Deitz* that "many corporations have centralized departments to manage claims and litigation, and with the advent of computers, these corporations would be able to produce the requested information with relative ease." *Id. See also Stephens*, 425 S.E.2d at 585 n.14 ("[W]here the technology is readily available to allow a party to compile information requested in discovery within a reasonable time and at a reasonable cost, the party opposing discovery cannot rely on its failure to use that technology to avoid discovery").

Here, just as in *Deitz*, Defendant failed to set forth any information "regarding the amount of documentation that would have to be collected and reviewed in order to respond[.]" *Deitz*, 2015 WL 5031229, at *2. This stands in stark contrast to the circumstances in *Stephens*, where the insurer produced evidence that compilation of the information requested "would take literally years of man-hours to complete and would cost approximately $40 million." *Stephens*, 425 S.E.2d at 584-85. Absent any such

17

evidence, the Court rejects Defendant's conclusory, "boilerplate" objection of oppression and overbreadth.

In summary, the evidence sought in Topic 13 is relevant and discoverable. Plaintiffs have duly narrowed the scope of their inquiry such that their request is proportional to the needs of the case under the circumstances. Accordingly, Plaintiffs' *Motion to Compel* (ECF No. 69) is **GRANTED** as to Topic 13, and Defendant's *Motion for Protective Order* (ECF No. 71) is **DENIED** as to Topic 13.

### B. Attorney's Fees and Costs

Both of the parties have moved for an award of expenses incurred in motions practice on the discovery impasses at issue. (*See* ECF Nos. 69 at 7; 71 at 2). Pursuant to Rule 37, if a party's motion for an order compelling disclosure or discovery is granted, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). However, the Federal Rules further provide that, "[i]f the motion is granted in part and denied in part, the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added). Because an award of expenses is not mandatory under the Federal Rules, and in light of the outcome of the parties' respective motions, the undersigned **FINDS** that an award is not warranted under the circumstances.

### IV. CONCLUSION

In light of the foregoing, **IT IS ORDERED** that Plaintiffs' *Motion to Compel* (ECF No. 69) is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's *Motion for*

*Protective Order* (ECF No. 71) is **GRANTED IN PART** and **DENIED IN PART**, as set forth hereinabove. The parties are hereby **ORDERED** to meet and confer regarding appropriate date(s) to proceed with the noticed Rule 30(b)(6) deposition, and Defendant is **ORDERED** to promptly make Rule 30(b)(6) representative(s) available to Plaintiffs.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to counsel of record and any unrepresented party.

ENTERED:   January 20, 2026

_____
Dwane L. Tinsley
United States Magistrate Judge